UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FRANK J. KRZYZOWSKI,**

      **Plaintiff,**

v.                                              **Case No:  6:10-cv-1949-Orl-28KRS**

**JANET NAPOLITANO, SECRETARY,
U.S. DEPARTMENT OF HOMELAND
SECURITY,**

      **Defendant.**

_____/

**ORDER**

Plaintiff, Frank Krzyzowski, brings this action *pro se* under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, against Defendant, Janet Napolitano, Secretary of the United States Department of Homeland Security ("the Government"), who is the head of Krzyzowski's former employing agency, the Transportation Security Administration ("TSA").  Krzyzowski alleges that the TSA discriminated and retaliated against him in violation of the ADEA by failing to promote him and by firing him after he complained about age discrimination.[1]  The case is before

---

[1] The Government states that Krzyzowski has made, and failed to establish, a "claim of constructive discharge."  (Mot. Summ. J. at 1, 21).  It does not appear, however, that Krzyzowski has attempted to make such a claim.  His Complaint (Doc. 1) contains only a passing reference in the Statement of Facts to his being subjected "to a hostile work environment on the basis of his age and in retaliation for . . . prior statutorily protected activity." ( Doc. 1 ¶ 26).  Moreover, the Government has moved for summary judgment on "each claim in the Complaint," (Mot. Summ. J. at 1), and Krzyzowski does not address or otherwise mention any separate constructive discharge or hostile work environment claims in his Opposition brief.  The Court also notes that the Pre-Trial

the Court on the Government's Motion for Summary Judgment (Doc. 24), Krzyzowski's Opposition (Doc. 27), and the Government's Reply (Doc. 28).

## I.  Background

Frank Krzyzowski worked for the TSA at the Orlando International Airport as a Supervisory Transportation Security Officer. He was born in 1943. In September 2003, Krzyzowski filed an Equal Employment Opportunity ("EEO") Complaint in connection with his non-selection for a promotion. That complaint was settled.

After that time, Krzyzowski applied for a number of positions within the TSA for which he was not selected. The TSA's selection process for those positions generally involved two steps. First, officials at TSA headquarters screened applicants for the advertised positions and prepared a list of candidates who met the minimum qualifications for the position ("Best Qualified List"). Local TSA officials then assessed the candidates on the Best Qualified List and chose the final selectees for the positions.

In addition to not selecting Krzyzowski for those positions, the TSA fired Krzyzowski after he failed an annual re-certification test in 2006. Shortly thereafter, the TSA rehired him on the condition that he be retrained.

## II.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable factual inferences in the light most

---

Statement (Doc. 34) does not contain any references to such claims. Therefore, even if Krzyzowski had initially intended to bring separate claims based on constructive discharge or hostile work environment, the Court would conclude that those claims are abandoned.

favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1262 (quoting Anderson, 477 U.S. at 251-52).

### III. Analysis

Because Krzyzowski has not presented any direct evidence of discrimination or retaliation, the Court evaluates his claims using the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to determine if

he can establish his claims through circumstantial evidence.  See Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267 n.6 (11th Cir. 2001).

To establish a claim of age discrimination under the ADEA, the plaintiff has the initial burden of establishing a prima facie case by showing "(1) [plaintiff] was a member of a protected age group; (2) [plaintiff] was subject to adverse employment action; (3) a substantially younger person filled the position that [plaintiff] was seeking; and (4) [plaintiff] was qualified to do the job for which [plaintiff] was rejected."  Howell v. Compass Grp., 448 F. App'x. 30, 34 (11th Cir. 2011).  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997). If the plaintiff establishes a prima facie case, a presumption of discrimination arises. See, e.g., Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

A federal employee may assert a retaliation claim under the federal sector provision of 29 U.S.C. § 633a.  See Gomez-Perez v. Potter, 553 U.S. 474, 479 (2008). To establish a prima facie case of retaliation, the plaintiff must show (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal link between the two events.  See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993); Cavicchi v. Sec'y of Treasury, No. 04-10451, 2004 WL 4917357, at *5 (11th Cir. 2004) (unpublished).  Showing a causal link "requires a plaintiff to demonstrate that 'the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated.'" McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008) (alterations omitted) (quoting Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000)).

4

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory, nonretaliatory reason for its actions. <u>Brooks v. Cnty Comm'n of Jefferson Cnty.</u>, 446 F.3d 1160, 1162 (11th Cir. 2006). The defendant's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'" <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993)). "If the defendant articulates one or more such reasons, the presumption . . . is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir.1997)). The court "must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>Combs</u>, 106 F.3d at 1538 (internal quotations and citations omitted).

### 1. Transportation Security Specialist Position and Program Analyst (H pay-band) Position

As an initial matter, the Government points out that two of the positions Krzyzowski sought—the Transportation Security Specialist Position and the Program Analyst (H pay-band) Position—are no longer at issue. Krzyzowski admitted in his deposition that he was not on the Best Qualified List for the Transportation Security Specialist Position and that that position is not at issue. (Krzyzowski Dep., Doc. 24-1, at

5

126-29). He also admitted that he was not on the Best Qualified List for the Program Analyst (H pay-band) Position and that that position is not at issue either. (Id. at 130-31). Summary judgment as to these two positions must therefore be **GRANTED**.

2. **Customer Support Position and Program Analyst (I pay-band) Position**

The Government also argues that Krzyzowski has acknowledged that his claims based on the Customer Support Position and the Program Analyst (I pay-band) Position are not at issue either. In response, Krzyzowski suggests in his Opposition that a TSA human resources manager, Trudy Helgeson, blocked his promotion to those positions by influencing the process at TSA headquarters. (Opp'n at 7). He states that Helgeson "implemented several strategies that would contribute to management's objective of hiring and promoting younger employees," and that "she was at headquarters during the time [those positions] were selected and she selected her employees." Id.

Yet Krzyzowski acknowledges that he was not on the Best Qualified List for these positions and that he does not know how the list was prepared at TSA headquarters. (Krzyzowski Dep. at 98-99). He also admits that he does not have any evidence of Helgeson's alleged influence on the decision-making process at TSA headquarters. (Id.). Krzyzowski's speculation about the selection process for these positions does not create a genuine issue of fact, see Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (noting that "speculation does not create a genuine issue of fact") (emphasis omitted), and therefore summary judgment must be **GRANTED** as to these two positions.

### 3. Management Analyst Position TSA-07-0071 and Management Analyst Position TSA-06-1913

The Government argues that Krzyzowski cannot state a prima facie case of age discrimination or retaliation based on his non-selection for either Management Analyst Position ("TSA-06-1913 Position" and "TSA-07-0071 Position") because Krzyzowski did not make the Best Qualified List for the TSA-06-1913 Position and the TSA did not select *anyone* for either position. (Mot. Summ. J. at 12). Krzyzowski does not address this issue in his Opposition.

Even if Krzyzowski had stated a prima facie case with respect to these two positions, the Government has offered nondiscriminatory and nonretaliatory reasons for not selecting anyone for either position. Federal Security Director ("FSD") Lee Kair explains that he decided not to select anyone for the TSA-06-1913 Position and to re-advertise that position after learning that many applicants "failed to notice and address" certain required questions in the application. (Kair Decl., Doc. 25 at 5). He re-advertised that position as TSA-07-0071, and TSA headquarters subsequently prepared another Best Qualified List. (Id. at 5-6). Krzyzowski made the Best Qualified List for the re-advertised position. (Ex. 10 to Krzyzowski Dep.). As part of the final selection process, three management officials[2] from other airports vetted the candidates, and then an interview panel comprised of senior leadership at other airports interviewed the candidates.[3] (Kair Decl., Doc. 25 at 6). Krzyzowski was one of several candidates selected for an interview. (Id.; Krzyzowski Dep. at 111).

---

[2] These management officials were Jack Abbott from the Daytona Beach Airport, Parker Bellaire from the Orlando Sanford International Airport, and Beverly Harvard from Hartsfield-Jackson Atlanta Airport. (Kair Decl., Doc. 25 at 6).

Kair informed the interview panel that he required the selectee to "be capable of representing [him] tactfully when dealing with senior management at TSA" and that the selectee would "function as an office manager and would be an integral part of [Kair's] organization." (Kair Decl., Doc. 25 at 6). After interviewing the candidates, the panel agreed that "none of the candidates could perform the duties at the level needed by [Kair]." (Bellaire Decl., Doc. 25 at 19). The panel then recommended that none of the candidates be selected. (Id.). Krzyzowski was not familiar with two members of the interview panel and he admits that the one interviewer with whom he was familiar did not discriminate or retaliate against him. (Krzyzowski Dep. at 124).

Krzyzowski has not addressed any of these arguments in his Opposition and his Opposition does not otherwise point to specific evidence to show that the TSA's proffered reasons for not selecting any candidates were pretexual. Notwithstanding Krzyzowski's failure to address these issues, the Government notes that Krzyzowski does suggest in his deposition testimony that Helgeson arranged to have a sham letter of reprimand issued to him to prevent him from getting the TSA-07-0071 Position, (Krzyzowski Dep. at 118, 120), but also that he admits he does not know whether the interviewers ever knew about the reprimand letter, (id. at 120).

Accordingly, there is no genuine dispute of material fact concerning Krzyzowski's non-selection for the TSA-06-1913 Position or the TSA-07-0071 Position. Summary judgment must therefore be **GRANTED** as to his claims related to these two positions.

---

[3] The interview panel consisted of Parker Bellaire from the Orlando Sanford International Airport, Rhonda Vickrey from the Tallahassee airport, and Philip Eastberg from the Melbourne airport. (Id.).

**4. Transportation Security Manager Position**

Krzyzowski claims that Keith Jeffries, the Assistant Federal Security Director for Screening at the Orlando Airport, discriminated and retaliated against him in connection with his non-selection for the Transportation Security Manager Position. Krzyzowski applied for the position in 2007 and was one of 49 candidates that TSA headquarters included on the Best Qualified List. (Jeffries Decl., Doc. 25 at 26). A three-person panel that included Jeffries vetted the 49 candidates on the Best Qualified List and selected 22 for interviews[4], of which Krzyzowski was one. (Id.). A three-person interview panel then scored the candidates on a number of pre-selected criteria and interview questions. (Id. at 34). Jeffries was one of the three interviewers on the interview panel as well. (Id. at 33). After the scores were tabulated, Krzyzowski ranked 14 out of the 22 candidates. (Ex. 29 to Krzyzowski Dep.; Jeffries Decl., Doc. 25 at 27). The top-ranked candidate declined the position, (Krzyzowski Dep. at 154), and the Final Selecting Official, Lee Kair, selected the next four highest-ranked candidates, (Kair Decl., Doc. 25 at 7).

Although the panel consisted of three interviewers, Krzyzowski claims that only Jeffries discriminated and retaliated against him in connection with this position. (Krzyzowski Dep. at 167). The Government has assumed for the purposes of summary judgment that Krzyzowski can make out a prima facie case of age discrimination for this position, but the Government argues that he cannot establish a prima facie case of retaliation because Jeffries did not know about the EEO activities on which the retaliation allegedly was based. (Mot. Summ. J. at 14-15). Jeffries denies knowing

---

[4] The panel originally selected 23 candidates for interviews, but one withdrew, leaving a pool of 22 candidates. (Jeffries Decl., Doc. 25 at 26).

about the EEO activities, but Krzyzowski disputes this and states that he "honestly believe[s] management discusses all of that." (Krzyzowski Dep. at 156). Nonetheless, Krzyzowski admits that other than his "belief" he does not have any evidence that Jeffries knew about the prior EEO activity. (Id. at 157). Such speculation does not suffice to create a genuine issue of fact as to prima facie retaliation. See Cordoba, 419 F.3d at 1181.

Even if Krzyzowski were able to establish a prima facie case of retaliation, the TSA's selection of the four other candidates on the basis of their higher combined scores satisfies the Government's burden of articulating a legitimate, nondiscriminatory and nonretaliatory reason for not selecting Krzyzowski. Moreover, Jeffries has explained his reasoning behind the individual scores he gave to Krzyzowski's answers to the interview questions. (Jeffries Decl., Doc. 25 at 34-35).

Krzyzowski in turn argues that Jeffries's scoring was merely a pretext for discrimination and retaliation. First, Krzyzowski argues that he was better qualified than the selected applicants. To show discriminatory intent based on his superior qualifications to the selected candidates, however, Krzyzowski must show that the difference is "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate[s] selected over [him]." Yili Tseng v. Fla. A&M Univ., 380 F. App'x. 908, 910 (11th Cir. 2010) (quoting Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006)).

Krzyzowski asserts generally that he had successfully worked in the position on a temporary basis, and that the selectees for the position were "younger" and "newly hired," and that some selectees had even worked under him. (Opp'n at 9). This

10

generalized assessment does not show that the selectees' qualifications were of such a different caliber that "no reasonable person" could have chosen them over him. And although Krzyzowski also states that an "HQ/HR reviewer" at headquarters told him he was "Best Qualified" and "on the top of the list," (id. at 7), this statement is hearsay and lacking in any other evidentiary support. Moreover, even if the statement were admitted, it does not create an inference that his qualifications were so superior to the selectees' that no reasonable person could have chosen the selectees over him.

Krzyzowski further claims that one of the selectees did not meet the minimum qualifications described on the job notice for the position. The Transportation Security Manager job notice stated that applicants must have one year of experience "equivalent to [the] SV-G pay band or the GS-11 grade level or higher." (Doc. 27-3 at 11). According to Krzyzowski, selectee Ed Ramirez did not meet these qualifications.[5] Krzyzowski states that despite Ramirez's failure to meet the minimum qualifications, Jeffries "knowingly promoted him to Transportation Screening Manager." (Opp'n at 8). Yet, as the Government points out, it was TSA headquarters—not Jeffries or the interview panel—that determined Ramirez met the minimum qualifications and placed him on the Best Qualified List. (Jeffries Decl., Doc. 25 at 26). Krzyzowski has not claimed that the officials at TSA headquarters who selected the Best Qualified List discriminated or retaliated against him. In fact, he himself states that the decision-makers at headquarters are "certified and proficient" in assessing candidates' qualifications. (Opp'n at 8).

---

[5] Krzyzowski apparently relies on his own unsworn statement to support this claim.

Next, Krzyzowski argues that one of the interviewed candidates had been "pre-selected" for the position and that this shows that the interview process was merely a ruse. (Id. at 8). His only support for this assertion is the fact that a selectee, Ruth Gaertner, had her then-current job in human resources advertised as vacant before she was selected for the new position. But Gaertner has explained that Krzyzowski is incorrect in assuming that she was pre-selected for the new position.

Gaertner was a Supervisory Transportation Security Officer ("STSO") when she began a two-year detail in the Operations Center. (Gaertner Decl., Ex. 1 to Doc. 28, ¶¶ 3, 4). She planned to return to her STSO duties when her Operations Center detail ended. (Id. ¶¶ 8, 13). Six months before her detail was set to expire, she advised the Operations Center that the imminent vacancy should be posted soon to allow time for training her replacement. (Id. at 8). Although preparing to return to her prior STSO detail, Gaertner applied for a number of management positions and was eventually interviewed and selected for the Transportation Security Manager Position. (Id. ¶¶ 7, 11).

Finally, Krzyzowski claims that Jeffries told him during the interview that he "[has] done a lot for the country already, and that [he] should retire." (Krzyzowski Dep. at 167). Although Jeffries denies making this remark, (Jeffries Decl., Doc. 25 at 27), the Court assumes that he did for the purposes of summary judgment. Even so, that remark by itself does not show any clear discriminatory animus.

Importantly, none of Krzyzowski's arguments address the fact that Jeffries was but one of several panelists who scored him in connection with the Transportation Security Manager Position and that he does not claim any of the other panelists

discriminated or retaliated against him. In fact, the scoring sheet[6] for this position shows that Jeffries gave Krzyzowski a score equal to or greater than the scores given by the other panelists in all but one category. (Scoring Sheet, Ex. A to Jeffries Decl., Doc. 25). And even if Jeffries had given him the same score in that category as the other panelists, Krzyzowski's combined score would still not be higher than the combined scores of any of the selectees.[7]

In sum, Krzyzowski has not presented evidence creating a genuine issue of material fact as to whether the TSA's selection process for this position was pretext for age discrimination and retaliation. Thus, summary judgment must be **GRANTED** as to Krzyzowski's claims based on his non-selection for this position.

5. **Screening Manager Position TSA-07-277 and Screening Manager Position TSA-07-113**

The Government has assumed for the purposes of summary judgment that Krzyzowski can establish a prima facie case of age discrimination and retaliation based on his non-selection for Screening Manager Position TSA-07-277 and Screening Manager Position TSA-07-113. (Mot. Summ. J. at 18). The Government argues, however, that Krzyzowski fails to create an issue as to pretext.

Krzyzowski made the Best Qualified Lists for these positions. A three-person interview panel interviewed Krzyzowski and gave him a combined score lower than the

---

[6] Krzyzowski states in his Opposition that the scoring chart prepared in Orlando has "no similarity" to the dated and signed Best Qualified List prepared at headquarters, (Opp'n at at 9), but he does not explain why differences between those two documents would be of any significance. To the extent that he is attempting to call the document into question, he has not provided the Court any reason to do so.

[7] According to the scoring chart, Jeffries gave Krzyzowski a score of four in the "Relevant Management/Leadership Experience" category, while each of the other panelists gave Krzyzowski a ten. Even if Jeffries had given him a score of ten instead, his new total score would be 146, placing him twelfth on the list of candidates.

combined scores of the candidates selected for the position. (Kair Decl., Doc. 25 at 8, 9). Kair was the Final Selecting Official for this position and states that he chose the selectees based on the interview panel's assessment. (Id. at 8). Krzyzowski does not claim that Kair or any of the interviewers discriminated or retaliated against him in connection with this selection, but he claims that Helgeson did. (Krzyzowski Dep. at 138-39). Krzyzowski explained in his deposition that he bases this claim on the fact that the selectees were younger than he was and that another TSA employee who had filed EEO complaints told him that although Kair officially made the final selections, it was really Helgeson who made the selections for Kair. (Id. at 138, 142-43).

Even if the other employee's statements were admissible, Krzyzowski does not address the evidence that an interview panel scored him lower than the selectees and that Kair made his selections based on the interview panel's assessment. (Kair Decl., Doc. 25 at 8, 9, 11). Krzyzowski has not accused Kair or the interviewers of discrimination and has not produced any evidence showing that Helgeson influenced the interview process for this position. Accordingly, Krzyzowski has not presented evidence creating a genuine dispute of material fact as to whether the TSA's reasons for not selecting him were merely pretext for retaliation or discrimination. Summary judgment must therefore be **GRANTED** with respect to Krzyzowski's claims based on his non-selection for Screening Manager Position TSA-07-277 and Screening Manager Position TSA-07-113.

### 6. Termination for Failure to Pass Image Test

Krzyzowski was fired from his position as Supervisory Transportation Security Officer on February 17, 2006 after failing to pass a passenger screening image test.

(Meinke Aff., Doc. 25 at 52-53).  The Government has assumed for the purposes of its summary judgment motion that Krzyzowski can establish a prima facie case of age discrimination and retaliation in connection with his termination.  (Mot. Summ. J. at 20).  The Government moves for summary judgment on the basis that Krzyzowski fails to create an issue as to pretext in connection with the termination.

Krzyzowski became a "dual-certified" supervisor in 2005, (Doc. 27-2 at 31), meaning that he was certified to act as both a passenger screener and a baggage screener, (Krzyzowski Dep. at 46-47).  As part of an annual re-certification process, dual-certified screeners were required to take a screening test with a baggage component and a passenger component.  (Meinke Aff., Doc. 25 at 52-53).  In prior years, dual-certified screeners who failed one component of the test but passed the other were permitted to work in the area corresponding to the portion they passed.  (Id.).  A few months prior to the annual recertification process in 2006, however, FSD Arthur Meinke communicated to the screeners that they would be required to pass both portions of the test.  (Id.).  Meinke explains in his affidavit that employees had started gaming the system by deliberately failing a portion of the test in order to avoid working in the corresponding screening area.  (Id. at 53).

After failing the image test, Krzyzowski was given additional hours of training and permitted to take the test a second time.  (Krzyzowski Dep. at 46-47).  He failed the second time, (id.), and Meinke informed Krzyzowski that he had decided to terminate his employment on account of his failure to meet the requirements for annual re-certification.  (Doc. 27-2 at 35).  Over 20 other dual-certified screeners were also

terminated for failing one of the components of the dual-certification test. (Krzyzowski Dep. at 47-48; Meinke Aff., Doc. 25 at 52-53).

Meinke explains that after terminating these dual-certified screeners for failing to pass one of the components, he learned that the screeners had difficulty maintaining proficiency in both areas because the scheduling department had not adequately rotated them in both areas due to operational issues. (Meinke Aff., Doc. 25 at 53). Meinke therefore decided to rescind the terminations. (Id.). The terminated screeners, including Krzyzowski, returned to work with back pay on the condition that they retrain for and pass whichever component of the test they had failed. (Id.).

This explanation for Krzyzowski's termination constitutes a legitimate, nondiscriminatory and nonretaliatory reason. In response, Krzyzowski argues that his failure to pass the test was merely pretext. Without citing to specific supporting evidence, Krzyzowski states in his Opposition that he was "forced by management" to take the image test and that "[o]ther younger employees were given additional training, allowed to test many times until they passed, or reassigned to office duties when they failed." (Opp'n at 5). Krzyzowski has also testified that Meinke called him a "trouble maker." (Krzyzowski Dep. at 65). Finally, although he admits he is not aware of Meinke making any age-related comments, (id. at 66), he has presented evidence of managers other than Meinke saying that the TSA needs younger employees.

None of Krzyzowski's arguments, however, account for the 20 other dual-certified screeners who were also fired for failing to pass a component of the test. While he states that two of these terminated employees were over 50 years old, (Krzyzowski Dep. at 56), he has not established the ages of the other terminated employees.

In sum, Krzyzowski has not presented evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [TSA's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" <u>Combs</u>, 106 F.3d at 1538. Accordingly, summary judgment must be **GRANTED** as to the claims related to Krzyzowski's termination.

### IV. Conclusion

In accordance with the foregoing, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED**.

2. The Clerk is directed to enter a judgment providing that Plaintiff takes nothing from Defendant on Plaintiff's claims. Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida on December 3, 2012.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties